```
                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ALABAMA
                          SOUTHERN DIVISION
```

FILED
03 JAN 29 PM 4:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| CYNTHIA R. ANDREWS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. CV-02-S-603-S |
| | ) |
| ELASTIC CORPORATION | ) |
| OF AMERICA, INC., | ) |
| | ) |
| Defendant. | ) |

ENTERED
JAN 3 0 2003
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

### MEMORANDUM OPINION

Plaintiff, Cynthia R. Andrews, was terminated by defendant Elastic Corporation of American, Inc., from employment as one of its two Division Directors of Human Resources, allegedly in connection with the corporation's downsizing. Plaintiff contends that defendant discriminated against her on the basis of gender, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*[1] Plaintiff also asserts a claim based upon the Equal Pay Act, 29 U.S.C. § 206(d)(1), as well as various state law claims.

Defendant initially responded to plaintiff's complaint by filing a "Motion to Dismiss or, in the Alternative[,] Motion for Summary Judgment."[2] Following the recusal of Chief Judge Clemon,

---

[1] In her complaint, plaintiff also asserted a claim of gender discrimination based upon 42 U.S.C. § 1981. As defendant has correctly pointed out in its motion to dismiss or, in the alternative, for summary judgment, such claims are not cognizable, as the statute proscribes race discrimination only. *See, e.g., Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459-60, 95 S. Ct. 1716, 1720, 44 L. Ed. 2d 295 (1975) ("§ 1981 affords a federal remedy against discrimination in private employment on the basis of race."); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 436, 88 S. Ct. 2186, 2201, 20 L. Ed. 2d 1189 (1968) ("In light of the concerns that led Congress to adopt it and the content of the debates that preceded its passage, it is clear that the Act was designed to do just what its terms suggest: to prohibit all racial discrimination, whether or not under color of law. . . ."); *Little v. United Technologies*, 103 F.3d 956, 961 (11th Cir. 1997) ("It is well-established that § 1981 is concerned with *racial* discrimination in the making and enforcement of contracts.") (emphasis in original) (citations omitted).

[2] Doc. no. 6, filed on April 18, 2002. (All citations to a "doc. no. ___" refer to the numbers assigned to pleadings stamped by the Clerk as "filed.")



to whom this case originally was assigned,[3] the action was reassigned by the Clerk to this court, which denied defendant's motion, and, reminded the parties of their obligations under Federal Rule of Civil Procedure 26(f).[4]

Defendant then filed an answer to the complaint, including state law counterclaims for breach of contract, fraudulent suppression, and fraudulent misrepresentation based upon a severance agreement and release executed by plaintiff in conjunction with the termination of her employment.[5] In part, the counterclaim alleges that:

> 2. From approximately March 10, 1997 through approximately October 10, 2000, Plaintiff was employed by Defendant as one of its Division Directors of Human Resources.
>
> 3. During Plaintiff's employment with Defendant, Defendant was reorganizing its operations under the protections of the bankruptcy laws of the United States. In fact, Plaintiff was aware of the closing of at least one of Defendant's facilities.
>
> 4. Shortly before October 10, 2000, Defendant determined that it would eliminate one of its two Division Directors of Human Resources positions. In determining which Division Director's position to eliminate, Defendant focused on the tenure and pay of the two Division Directors and decided to eliminate the Division Director with lesser seniority and higher pay, Plaintiff.
>
> 5. As a result of this decision, on or about October 10, 2000, Plaintiff was informed that her position was being eliminated and that the remaining Division Director of Human Resources, Ken Auman, would be assuming her responsibilities.
>
> 6. In compliance with its regular practice when terminating employees' employment as a result of a downsizing, on October 10, 2000, Plaintiff was informed of her termination and was offered, in exchange for a Severance Agreement and

---

[3]This is another of those cases in which Chief Judge U.W. Clemon was required to recuse himself due to the appearance of the law firm of Lehr, Middlebrooks, Price & Proctor, P.C., of which his nephew, Terry Price, is a member, on behalf of a defendant in an action originally assigned to Judge Clemon. *See, e.g*, the memorandum opinion and supplemental memorandum opinion entered in *Gladys Jenkins et al. v. BellSouth Corp.*, No. CV-02-C-1057-S (N.D. Ala. Aug. 26 & Sept. 13, 2002) (doc. nos. 49 & 57, respectively) (collecting cases).

[4]*See* Order entered April 30, 2002 (doc. no. 8).

[5]*See* Answer, Defenses and Counterclaim filed May 31, 2002 (doc. no. 10), at 15-21.

2

Release In Full, a severance package commensurate with her length of service with Defendant.

7. Plaintiff rejected Defendant's initial severance offer and, over approximately two weeks, negotiated with Defendant for a higher monetary severance payment in exchange for the Severance Agreement and Release In Full.

8. After having worked for Defendant for approximately three and one half years, Plaintiff received sixteen weeks pay, payment for two weeks vacation, and an additional $687.50 in consideration for a Severance Agreement and Release In Full.

9. On or about October 23, 2000, Plaintiff executed the Severance Agreement and Release In Full in favor of Defendant. This Severance Agreement and Release In Full, which contains Plaintiff's notarized signature, states as follows:

> **Employee, . . . does fully release and discharge Company**, its parent company, subsidiaries, officers, . . . **of and from any and all grievances, charges, contracts, employment contracts, suits, legal actions, tortious actions, and claims of any nature whatsoever**, legal and equitable, known and unknown, past and present, **including, but not limited to, any and all claims arising out of or as a result of Employee's employment with Company and separation from employment with Company** and those claims which could have been asserted by Employee against Company, or any other released party and any and all claims and causes of action arising under any federal, state, and local laws including, but not limited to, those claims arising under Ala. Code § 25-1-20 *et seq.*; Ala. Code § 25-5-11.1 *et seq.*; Ala. Code § 37-8-270; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Civil Rights Act of 1991, Pub. Law 102-166; . . . and all other common and statutory laws, ordinances, and orders of the United States of America and the state of Alabama and its political subdivisions thereof.[6]

The report of the parties' planning meeting filed on July 30, 2002 informed the court of the parties' joint proposal "to bifurcate discover and seek a ruling on the [legal effect of the] release signed by the Plaintiff before expending time and money on 'merits' discovery and litigation."[7] The

---

[6] *Id.* at 16-17 (boldface emphasis in original).
[7] Doc. no. 16, at 1 n.1.

3

court accepted that proposal, and ordered that discovery should proceed only upon "the issue of the enforceability of the 'Severance Agreement and Release In Full' executed by the parties . . . ."[8] That order also advised the parties that the court would treat defendant's motion to dismiss or, in the alternative, for summary judgment, which was originally filed on April 18, 2002, but overruled on April 30, 2002, "as refiled."[9] Thus, this action presently is before the court on that "refiled" motion, requesting "this Court [to] dismiss Plaintiff's Complaint or, alternatively, enter summary judgment in its favor, and order Plaintiff to pay all reasonable costs and attorneys' fees incurred by Defendant in the defense of this matter . . . ."[10] Upon consideration of the pleadings, evidentiary submissions, and briefs, the court concludes that the motion is due to be granted.

Both parties have filed evidentiary submissions. If matters outside the pleadings are presented to and considered by the court when ruling upon a Rule 12(b)(6) motion to dismiss, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Rule 12(b), Fed. R. Civ. P.; *see also, e.g., Arnold v. United States Postal Service*, 649 F. Supp. 676, 678 (D. D.C. 1986) (Richey, J.). This allows the court's inquiry to be fact

---

[8]Doc. no. 17.

[9]*Id.* In full text, the order entered on August 2, 2002 reads as follows:

> The court has before it the report of parties' planning meeting filed July 30, 2002, approximately 45 days after its due date. The report proposes that the court bifurcate discovery and rule on the "effect of the release signed by Plaintiff," before the parties "expend[] time and money on the 'merits' discovery and litigation." (Report of Parties' Planning Meeting, ¶ 3a). The court accepts the proposal and hereby orders that discovery of the issue of the enforceability of the "Severance Agreement and Release In Full" executed by the parties be commenced in time to be completed by September 6, 2002. On September 9, 2002 the court will treat the motion to dismiss, or in the alternative, motion for summary judgment, which was originally filed April 18, 2002, and overruled April 30, 2002, as refiled (doc. no. 6). As so treated, the motions will be deemed submitted on September 30, 2002. Any additional evidentiary submission and/or brief submitted in support of the motion shall be filed on or before September 16, 2002. Any evidentiary submission and/or brief in opposition to the motions shall be filed on or before September 30, 2002.

[10]Defendant's motion to dismiss or, in the alternative[,] motion for summary judgment (doc. no. 6), at 3-4.

4

specific and allows the nonmovant to demonstrate the existence of any genuine issues of material fact.

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but that it "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)) (internal quotation marks and citations omitted); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

When adjudicating a motion for summary judgment, courts may consider only evidence that would be admissible at trial. *See Denney v. City of Albany*, 247 F.3d 1172, 1189 n.10 (11th Cir. 2001) (citing *Prichard v. Southern Company Services*, 92 F.3d 1130, 1135 (11th Cir. 1996) (holding

that a plaintiff "cannot use inadmissible hearsay to defeat summary judgment when that hearsay will not be reducible to admissible form at trial") (in turn citing *McMillian v. Johnson*, 88 F.3d 1573, 1583-84 (11th Cir. 1996) (same)); *see also, e.g., Victoria L. by Carol A. v. District School Board*, 741 F.2d 369, 373 (11th Cir. 1984). *Samuels v. Doctors Hospital, Inc.*, 588 F.2d 485, 486 & n.2 (5th Cir. 1979); *Broadway v. City of Montgomery*, 530 F.2d 657, 661 (5th Cir. 1976); *Roucher v. Traders & General Insurance Co.*, 235 F.2d 423, 424 (5th Cir. 1956); *Soles v. Board of Commissioners of Johnson County, Georgia*, 746 F. Supp. 106, 110 (S.D. Ga. 1990).

With the foregoing standards in mind, the following facts either are not disputed or are stated in the light most favorable to plaintiff.

## I. FACTUAL BACKGROUND

Plaintiff was hired by defendant Elastic Corporation of America, Inc. ("ECA") as one of its two Division Directors of Human Resources on March 10, 1997.[11] In that capacity, she was responsible for the human resources functions at ECA's plants located in Columbiana, Alabama, Woodlawn, Virginia, and Hemmingway, South Carolina.[12] Plaintiff continued to be employed by ECA until October 10, 2000, the date that she was informed by corporate president Ed Gleadall that her employment was terminated.[13] Plaintiff was told that her termination was due to the corporation's downsizing efforts.[14] She also was advised that Ken Auman, the other Division

---

[11]This specific information as to plaintiff's precise title is not contained in the parties' evidentiary submission; however, plaintiff admitted this factual allegation in her answer to defendant's counterclaim. *See* doc. no. 10 (Answer, Defenses, and Counterclaim) ¶ 2, at 16; doc. no. 12 (Plaintiff's Answer to Defendant's Counterclaim and Plaintiff's Affirmative Defenses) ¶ 2, at 1.

[12]Doc. no. 20 (Defendant's Evidentiary Submission in Support of its Motion to Dismiss or, in the Alternative, Motion for Summary Judgment), ex. 1, at 11-12.

[13]Doc. no. 27 (Plaintiff's Evidentiary Submission in Opposition to Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment), ex. 1 (deposition of Cynthia Andrews), at 52.

[14]*Id.* at 56.

Director of Human Resources, who had more seniority than plaintiff, would assume her duties.[15]

Plaintiff was offered a severance package, including two or three weeks of pay, as well as outplacement services. Plaintiff negotiated a more lucrative package, however, and received her regular pay check for sixteen weeks, was paid for two weeks of vacation, and received a lump sum in lieu of outplacement services.[16] The total value of her severance package was $23,585.66.[17]

A "Severance Agreement and Release in Full" was executed by plaintiff and, in pertinent part, it contains the following provisions:

> FOR AND IN CONSIDERATION of the mutual promises of the parties to this Agreement, the receipt and sufficiency of which are hereby acknowledged, Employee and the Company agree as follows:
>
> . . . .
>
> 3.  Employee, for herself, her attorney, attorneys-in-fact, agents, administrators, heirs and assigns, *does fully release and discharge Company*, its parent company, subsidiaries, officers, directors, shareholders, attorneys, agents, employees, servants, affiliates, successors and assigns, *of and from any and all grievances, charges, contracts, employment contracts, suits, legal actions, tortious actions, and claims of any nature whatsoever, legal and equitable, known and unknown, past and present, including, but not limited to, any and all claims arising out of or as a result of Employee's employment with Company and separation from employment with Company* and those claims which could have been asserted by Employee against Company, or any other released party *and any and all claims and causes of action arising under any federal, state, and local laws including, but not limited to, those claims arising under* Ala. Code § 25-1-20 *et seq.*; Ala. Code § 25-5-11.1 *et seq.*; Ala. Code § 37-8-270; *Title VII of the Civil Rights Act of 1964*, 42 U.S.C. § 2000e *et seq.*; the Civil Rights Act of 1991, Pub. Law 102-166; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA); the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*; the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*; *the Fair Labor Standards Act*, 29 U.S.C. § 201 *et*

---

[15]*Id.* at 81.

[16]*Id.* at 88-89; *id.* at deposition exhibit 5.

[17]*Id.* at 137.

>  *seq.*; the National Labor Relations Act, as amended, 29 U.S.C. § 151 *et seq.*; and all other common and statutory laws, ordinances, and orders of the United States of America and the state of Alabama and its political subdivisions thereof.[18]
>
>  . . . .
>
>  7.  The undersigned parties affirm that the only consideration for signing this Agreement is the terms stated above, that no other promises or agreements of any kind have been made to or with them by any person or entity whatsoever to cause them to sign this Agreement, and that *they fully understand the meaning and intent of this instrument*, and this Agreement supersedes any and all prior agreements or understandings between the parties.[19]

The agreement was executed on October 23, 2000, nearly two weeks after plaintiff initially was informed of her termination.[20] According to the agreement, the effective date of plaintiff's discharge was October 10, 2000.[21]

Prior to beginning her employment with ECA during March of 1997, plaintiff had served as director of human resources for the following companies: Visiting Nursing Association (February of 1994 until October of 1995); Liberty Childrenswear Company (October of 1995 until March of 1997); The Home Insurance Company (December of 1991 until October of 1993); Jefferson Home Furniture Company (June of 1983 until October of 1991); and Lakeshore Hospital (January of 1979 until April of 1982).[22] Plaintiff's resume summarizes her career as follows:

>  Human Resources Generalist with 20+ years of experience in all facets of Human Resources including employee relations, benefit design and administration, policy and procedure development, administration and interpretation, training, written communications including employee handbooks and newsletters, compensation,

---

[18]Doc. no. 27 (Plaintiff's Evidentiary Submission in Opposition to Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment), ex. 1 (deposition of Cynthia Andrews), at deposition exhibit 5, at 1-3 (emphasis supplied).

[19]*Id.* at 3.

[20]*Id.* at 4.

[21]*Id.* at 1.

[22]*Id.* at deposition exhibit 2.

8

safety, workers compensation, EEOC and OSHA compliance.[23] Her resume also reflects that she earned an undergraduate degree in education from Ohio State University in 1972, and that she was a member of the Birmingham Society for Human Resource Management and the National Society for Human Resource Management.

As part of plaintiff's duties for ECA, she had presented severance agreements to other employees.[24] It was her practice to advise an employee to consult an attorney, if he or she had any questions about the terms of the agreement.[25] Even so, plaintiff did not consult an attorney about her own severance agreement prior to signing it. Plaintiff testified during deposition that she was satisfied with the terms of the agreement at the time that she signed it, and that she believed she had done a good job negotiating a more generous package than she initially had been offered.[26] She first consulted an attorney regarding the present action during February of 2001, more than three months after executing the severance agreement and release.[27]

Plaintiff alleges that her termination was discriminatory, and that the stated reason for the action — corporate downsizing — was a pretext. She bases her assertion primarily on the fact that, contemporaneously with her termination, hourly production employees received a pay raise. Additionally, after she signed the severance agreement and release of claims, she learned that most of the employees who had been terminated due to downsizing were women. Plaintiff further contends that a new position, safety manager, was created after her termination and, although she

---

[23]*Id.*

[24]Doc. no. 27 (Plaintiff's Evidentiary Submission in Opposition to Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment), ex. 1 (deposition of Cynthia Andrews), at 91.

[25]*Id.* at 91-92.

[26]*Id.* at 101-02.

[27]*Id.* at 92.

9

was qualified to fill the position, it was not offered to her.[28]

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on April 6, 2001.[29] She subsequently received notice of her right to sue,[30] and filed this action on March 7, 2002.

## II. DISCUSSION

Defendant contends that plaintiff waived the claims she asserts in this action by signing the severance agreement and release, and seeks summary judgment on its counterclaim for breach of contract. Plaintiff argues that she was fraudulently induced to sign the agreement, and that she did not waive *future* claims against ECA by signing the release.

### A.   Validity of Release with Respect to Federal Claims

An employee who knowingly and voluntarily releases an employer from liability for federal discrimination claims with a full understanding of the terms of the agreement is bound by that agreement. *See, e.g., Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 & n.15, 94 S. Ct. 1011, 1021 & n.15, 39 L. Ed. 2d 538 (1986). Courts use a "totality of the circumstances" approach to determine whether the waiver was knowing and voluntary, including consideration of the following factors:

> [T]he plaintiff's education and business experience; the amount of time the plaintiff considered the agreement before signing it; the clarity of the agreement; the plaintiff's opportunity to consult with an attorney; the employer's encouragement or discouragement of consultation with an attorney; and the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled.

---

[28]*Id.* at 131.

[29]*Id.* at deposition exhibit 8.

[30]The record does not contain a copy of the notice, but the complaint alleges that this action has been timely filed. *See* doc. no. 1 (Complaint) ¶ 3, at 2.

*Puentes v. United Parcel Service, Inc.*, 86 F.3d 196, 198 (11th Cir. 1996) (citing *Beadle v. City of Tampa*, 42 F.3d 633, 635 (11th Cir. 1995)).

Applying those factors to the facts of this case leads the court to the conclusion that the release was valid and should be enforced. Plaintiff is college-educated, and has more than twenty years of experience in the field of human resources. She testified during deposition that, as part of her duties as ECA's director of human resources, she had presented severance agreements to other employees on behalf of the company.

The amount of time plaintiff considered the agreement was significant. She was presented with the agreement initially on October 10, 2000, when she was informed that her employment would be terminated. At that time, ECA offered her three weeks of severance pay.[31] During the next two weeks, plaintiff negotiated considerably more favorable terms — namely, sixteen weeks of severance pay, pay for two weeks of vacation, and a lump sum in lieu of placement services.[32] It therefore is clear that plaintiff had sufficient time to consider the agreement. *Cf. Puentes*, 86 F.3d at 199-200 (where plaintiffs were given only twenty-four hours to decide whether to sign releases and played no role in deciding the terms, genuine issue of material fact existed as to whether plaintiffs knowingly and voluntarily executed the releases).

Additionally, the agreement is clear and specific, and plaintiff has not contended to the contrary.

Moreover, plaintiff had the opportunity to consult an attorney. Not only did she have ample time to do so, plaintiff acknowledged that she was aware of the wisdom of seeking legal advice.

---

[31] Doc. no. 27 (Plaintiff's Evidentiary Submission in Opposition to Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment), ex. 1 (deposition of Cynthia Andrews), at 52-53.

[32] *Id.* at 88-89.

Indeed, in her capacity as director of human resources, she had counseled other employees to consult attorneys before executing severance agreements.[33] Although the record does not contain evidence that plaintiff was either encouraged or discouraged by her employer to consult an attorney, in light of the foregoing facts, the importance of that factor is minimized.

Finally, the consideration that plaintiff received in exchange for executing a release of all claims far exceeded that initially offered, or to which she already was entitled. Plaintiff specifically acknowledged, by executing the agreement, that "[t]he parties agree that Company has no prior legal obligation to make the payment agreed to . . . and that payment is in addition to anything of value to which Employee is already entitled."[34] There is no evidence that employees of ECA were entitled to *any* severance pay upon termination,[35] much less the amount plaintiff ultimately secured for herself.

Despite these compelling facts, plaintiff contends that the severance agreement should not be enforced. Plaintiff's first argument is that, although she was told that her job was eliminated due to downsizing, other employees received pay raises contemporaneously with or shortly after her termination, and a new position, safety manager, was created after her discharge. On this basis, plaintiff concludes that she was misled by ECA, and alleges that she was fraudulently induced to execute the agreement. Plaintiff has failed to offer any evidence, other than her own speculation, that ECA falsely represented that her discharge was due to downsizing. Plaintiff testified that, during the meeting at which she was informed of her discharge, ECA's president, Ed Gleadall, told her that her job had been eliminated, that she would receive three weeks of severance, "that the

---

[33]*Id.* at 91-92.

[34]*Id.*, ex. 5 ¶ 4, at 3.

[35]Plaintiff stated that ECA's "unwritten policy" was to offer one week of severance pay for each year the employee had worked for the company. *Id.* at 121-22.

decision was based on downsizing, and that Worldtex[36] made him do it."[37] Additionally, plaintiff stated that she "assumed downsizing was as a result of a downturn in the financial situation of the company."[38] She acknowledged, however, that "business factors can lead to multiple reasons to downsize."[39] Based on the foregoing, the court finds that the mere fact that some of ECA's employees may have received pay raises at the same time other employees, including plaintiff, were discharged does not compel the conclusion that ECA falsely represented its reason for terminating plaintiff's employment. Likewise, the creation of a new position does not establish that ECA's proferred reason for plaintiff's discharge was false. Importantly, plaintiff does not contend that the position she occupied continues to exist.

Plaintiff also argues that the claims she asserts in this action are not barred because they are *future* claims.[40] Plaintiff contends that, after she executed her release, she learned that many of the employees whose jobs had been eliminated were women, and that several men whose jobs were eliminated were offered other positions with the company; and, thus, her claim of unlawful discrimination did not arise until after she was discharged. This argument is patently frivolous. Where, as here, plaintiff has not alleged a "pattern and practice" or a "hostile work environment" violation of Title VII, the operative event is her termination. *See, e.g., National Rail Road Passenger Corp. v. Morgan,* 536 U.S. 101, ___, 122 S. Ct. 2061, 2071, 153 L. Ed. 2d 106 (2002) ("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'").

---

[36] Worldtex purchased ECA shortly before plaintiff was discharged. *See* doc. no. 27 (Plaintiff's Evidentiary Submission in Opposition to Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment), ex. 1 (deposition of Cynthia Andrews), at 48.

[37] *Id.* at 52-53.

[38] *Id.* at 26.

[39] *Id.* at 103-04.

[40] Doc. no. 26 (Plaintiff's Memorandum Brief in Opposition to Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment), at 8.

For all of the foregoing reasons, the court concludes that the release executed by plaintiff in connection with her discharge from ECA is valid and should be enforced. Accordingly, plaintiff's federal claims are due to be dismissed on that basis.

### B. Plaintiff's State Law Claims

In her complaint, plaintiff asserted claims of fraud, fraudulent suppression, and breach of contract. Plaintiff did not, however, address those *affirmative* claims when opposing summary judgment.

Issues and contentions not raised in a party's brief are deemed abandoned. *See, e.g., Chapman v. AI Transport* 229 F.3d 1012, 1027 (11th Cir. 2000) (en banc) ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards."); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that a district court can "properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment") (citing *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (holding that a ground not pressed in opposition to a motion for summary judgment is to be treated by the district court as abandoned)).

> In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." *Ryan v. Int'l Union of Operating Eng'rs, Local 675*, 794 F.2d 641, 643 (11th Cir. 1986). There is no burden on the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990). Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. . . .

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (some citations

omitted).[41]

Furthermore, even if plaintiff had not abandoned her state law claims, for the reasons stated above, she waived the right to assert them by executing the severance agreement and release. Accordingly, her state law claims also are due to be dismissed.

## C. ECA's Counterclaim for Breach of Contract

ECA also seeks summary judgment on its counterclaim against plaintiff for breach of contract.

Under Alabama law, "[i]n the ordinary breach of contract action, the claimant must prove: (1) the existence of a valid contract binding the parties in the action, (2) [its] own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Southern Medical Health Systems v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995).

As discussed in detail above, the court has found that the severance agreement and release executed by ECA and plaintiff is a valid, binding contract. Because plaintiff has acknowledged receiving payment in the sum of $23,585.66 from ECA,[42] the second element has been established. The third element also has been established, by the filing of this civil action. Finally, the court is satisfied that ECA has suffered damages as a result of plaintiff's breach. ECA paid plaintiff in accordance with the agreement, but received no benefit from its bargain. Accordingly, the court

---

[41] *Cf., e.g., Lucas v. W.W. Grainger, Inc.* 257 F.3d 1249, 1255 n.1 (11th Cir. 2001) ("Lucas has abandoned his unlawful harassment claim by not raising it in his initial brief on appeal.") (citing *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1317 n.17 (11th Cir. 1999) ("Issues that are not clearly outlined in an appellant's initial brief are deemed abandoned.") (citations omitted)); *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995) ("We note that issues that clearly are not designated in the initial brief ordinarily are considered abandoned.") (quotation marks and citation omitted); *Marek v. Singletary*, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned.") (citing *Allstate Insurance Co. v. Swann*, 27 F.3d 1539, 1542 (11th Cir. 1994)); *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (declining to address issue for failure of party to argue it in its brief on appeal).

[42] Doc. no. 27 (Plaintiff's Evidentiary Submission in Opposition to Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment), ex. 1 (deposition of Cynthia Andrews), at 137.

concludes that ECA is entitled to summary judgment on the issue of plaintiff's liability for breach of contract.

### III. CONCLUSION

For the foregoing reasons, ECA's motion for summary judgment is due to be granted. A separate order consistent with this memorandum will be entered contemporaneously herewith.

DONE this **29th** day of January, 2003.

_____
United States District Judge